IN THE SUPREME COURT OF THE STATE OF DELAWARE

IN THE MATTER OF A MEMBER   §
OF THE BAR OF THE SUPREME   § No. 21, 2019
COURT OF DELAWARE:   §
  § Board Case No. 113845-B
DONALD C. VAVALA, III,   §
  §
  Respondent.   §

Submitted: February 3, 2019
Decided:   March 14, 2019

Before **STRINE**, Chief Justice; **VALIHURA** and **SEITZ**, Justices.

# **O R D E R**

It appears to the Court that:

(1)    This is a lawyer disciplinary proceeding. On January 14, 2019, a panel of the Board on Professional Responsibility ("the Board") filed its Report with this Court, recommending that the respondent, Donald C. Vavala, III, be suspended from the practice of law in Delaware for a period of 15 months, retroactive to the date of Vavala's interim suspension on May 3, 2018. Neither the Office of Disciplinary Counsel ("ODC") nor Vavala has filed any objections to the Board's report.

(2)    The Court has considered the matter carefully. Vavala admitted the ethical violations alleged in the ODC's petition against him. The Board carefully considered Vavala's ethical violations, his knowing state of mind, the potential injury and actual injury, the presumptive sanction, and all of the applicable aggravating and mitigating factors. Under the circumstances, we find the Board's

recommendation of a 15-month suspension to be appropriate. We therefore accept the Board's findings and recommendation for discipline.

NOW, THEREFORE, IT IS ORDERED that the Board's Report filed on January 14, 2019 (attached hereto) is ACCEPTED. Donald C. Vavala, III is hereby SUSPENDED from the practice of law in Delaware for a period of 15 months beginning May 3, 2018. Vavala shall pay the cost of the disciplinary proceedings. The Office of Disciplinary Counsel shall disseminate this Order in accordance with Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice

2

BOARD ON PROFESSIONAL RESPONSIBILITY

OF THE SUPREME COURT OF THE STATE OF DELAWARE

In the Matter of a )
Member of the Bar of the ) **CONFIDENTIAL**
Supreme Court of Delaware: )
 )   Board Case No. 113845-B
DONALD C. VAVALA, III, )
 )
Petitioner. )
 )

## REPORT AND RECOMMENDATONS OF THE HEARING PANEL

Pending before a panel of the Board on Professional Responsibility (the "Board") is a

Petition for Discipline filed by the Office of Disciplinary Counsel (the "ODC") in Board Case

No. 113845-B (the "Petition") against Donald C. Vavala, III, Esquire ("Respondent"), a member

of the Bar of the Supreme Court of the State of Delaware. The Petition alleged violations of

Rules 8.4 (b) and 8.4 (d) of the Delaware Lawyers' Rules of Professional Conduct. Respondent,

through his counsel, Charles Slanina, Esquire, filed an Answer to the Petition (the "Answer") on

August 23, 2018 admitting all of the allegations contained in the Petition.

On November 15, 2018, a panel of the Board on Professional Responsibility, Deirdre A.

McCartney, Esquire, Chair, William T. Deely, Esquire and Dr. Nisha Lodhavia ("the Panel")

held a joint liability and sanction hearing on the petition for discipline filed by the Office of

Disciplinary Counsel (ODC) in the above-captioned matter. Richard L. Williams, Esquire, as

special counsel to the Office of Disciplinary Counsel, presented the petition for ODC. Charles

Slanina, Esquire represented Donald C. Vavala, III, ("Respondent"). The Panel found that

Respondent violated Rules 8.4 (b) and 8.4 (d) of the Delaware Lawyers' Rules of Professional

Conduct ("Rules").

I

**Procedure Background**

On November 5, 2018, prior to the hearing, Counsel for ODC, Respondent and panel chair held a pre-hearing teleconference to discuss the upcoming hearing. At the request of the parties, a joint hearing was scheduled for both the liability and sanctions portions. At the Liability portion of the Hearing, the Panel received into evidence a joint exhibit book. The Panel also heard testimony from the Respondent. Following the liability portion of the hearing, the panel concluded that Respondent had violated all of the counts in the petition for discipline. During the sanctions portion of the hearing, the Panel heard testimony from the Respondent, Thomas Foley, Esquire, Russell Stokes Nolte, Esquire, Scott McDerby, David E. Wilks, Esquire, Timothy Cairns, Esquire, and Carol P. Waldhauser. After the sanctions portion of the hearing, counsel for the parties presented closing arguments. The record was closed on November 15, 2018.

For the reasons stated below, the Panel found Respondent violated Rules 8.4 (b) and 8.4 (d) by committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in others respects by pleading guilty to carrying a concealed dangerous instrument (2 counts) in violation of 11 Del. C. § 1443, Driving Under the Influence of Alcohol in violation of 21 Del. C. § 4177(a) and Illegal Possession of a Controlled Substance (Adderall) in violation of 16 Del. C. § 4716 (d) and by engaging in conduct prejudicial to the administration of justice by committing criminal acts that reflect adversely on his honesty, trustworthiness and fitness as a lawyer.

**Facts**

The record, in this proceeding, consists of the testimony of witnesses at the hearing, exhibits submitted in connection with the hearing and other submissions of the parties. The

2

transcript of the liability and sanctions portion of the hearing is cited hereinafter, as "Tr. At

_____." At the liability and sanctions portion of the hearing, the parties admitted joint

exhibits. The joint exhibits admitted at the liability portion of the hearing are cited hereinafter,

as "Ex at _____."

In Respondent's Answer, he admitted all of the violations alleged in the Petition. In

addition, the Panel received testimony from the Respondent and exhibits relating to factual

circumstances surrounding the violations. The exhibits consisted of 1) ODC's Petition for

Interim Suspension (April 24, 2018) with exhibit A; 2) Respondent's Answer to the Petition for

Interim Suspension (April 29, 2018) with exhibits 1-7; 3) Interim Suspension Order (May 3,

2018); 4) ODC's Petition for Discipline (August 6, 2018) with exhibits A-D; 5) Respondent's

Answer to the Petition for Discipline (August 23, 2018); 6) Erik Underhill, M.D.'s Medical

Records; 7) Robin-Belcher-Timme Psy.D Evaluation Report (May 7, 2018); 8) Alice O'Brien

MS, NCC, LPCMH Medical Records; 9) Aaron Alfano Psy.D Progress Notes (May 18, 2018-

September 28, 2018); 10) DE-LAP records; 11) Delaware Department of Correction Probation

and Parole Records; 12) Concealed Carry Course documents; 13) Memorandum of

Understanding; and 14) Court of Common Please Plea Agreement.

Respondent was admitted to the Bar of the Supreme Court of Delaware in 2015. Petition

and Answer ¶ 1. Respondent was engaged in the private practice of law with the law firm of

Wilks, Lukoff & Bracegirdle, LLC. Petition and Answer ¶ 2. On or about April 14, 2018,

Respondent was charged with Carrying a Concealed Deadly Weapon in violation of 11 Del. C. §

1442 (felony); Possession of Firearm while Under the Influence in violation of 11 Del. C. §

1460; Driving a Vehicle Under the Influence of Alcohol in violation of 21 Del. C. § 4177;

Tuning a Vehicle at Intersection Other than required by Traffic Control Device in violation of 21

3

Del. C. § 4152; Inattentive Driving in violation of 21 Del. C. § 4176; Failure to Remain within a Single Lane in violation of 21 Del. C. § 4122; Possession of a Weapon in a Safe School Zone in violation of 11 Del. C. § 1457 (felony); Possession of a Controlled Substance without a Prescription in violation of 16 Del. C. § 4763; and Possession of a Semi-Automatic Firearm by Person Who Possesses Controlled Substances in violation of 16 Del. C. § 4763 (felony). Petition and Answer ¶ 3.

On April 24, 2018, ODC filed a Verified Petition for Interim Suspension. Petition and Answer ¶ 6. On May 3, 2018, the Delaware Supreme Court suspended Respondent from the practice of law pending disciplinary proceedings. Petition and Answer ¶ 6. On May 22, 2018, Respondent entered a guilty plea to the following misdemeanor offenses: carrying a concealed dangerous instrument (2 counts) in violation of 11 Del. C. § 1443, Driving Under the Influence of Alcohol in violation of 21 Del. C. § 4177(a), and Illegal Possession of a Controlled Substance (Adderall) in violation of 16 Del. C. § 4716 (d). See Petition and Answer ¶ 8 and Ex. at 14. In the Answer to the Petition, Respondent admitted violations of Rules 8.4 (b) and 8.4 (d). Petition and Answer ¶ 14 and 16.

During the liability phase of the hearing, Respondent testified as to the factual circumstances that lead to the violations. Tr. at 16-40. Respondent indicated that on the day in question he went to a party after work and then to a couple of bars in Trolley Square and then to Famous Joe's bar in Branmar Shopping Center. Tr. at 16-17. He admitted that he consumed a number of alcoholic beverages that day and consumed alcohol at the various locations. Tr. at 17. He testified that he was pulled over while driving home. Tr. at 17. He further testified that the police found two loaded firearms in a bag on the floor on the front passenger side of the vehicle.

4

Tr. at 17. He indicated that the police also found six Adderall pills in a Ziploc bag in the car. Tr at 18.

The police arrested Respondent and obtained a warrant and Respondent's blood was drawn and it had a blood alcohol content of .18. Tr. at 18. Respondent did not have a prescription for the Adderall. Tr. at 19. Respondent indicated he entered into a plea agreement; pleading guilty to two counts of carrying a concealed dangerous weapon, one count of driving under the influence of alcohol, and one count of illegal possession of a controlled substance. Tr. at 21 and 22, Exhibit 4, sub attachment D. Respondent indicated that the guns were in his vehicle because he was an avid target shooter and intended to go to the range after work. Tr. at 27. Respondent further indicated that he usually empties his weapons ammunition at home prior to putting guns in his vehicle and he uses range ammunition while at the range. Tr. 27-28. He admitted that he was in a hurry to get to work that morning and failed to remove the ammunition at home prior to placing the guns in his car. Tr. 27-28.

Respondent testified he took Adderall on the day of his arrest in the morning and may have taken more at some point later that evening. Tr. at 30-31. Respondent further testified as to his history of Adderall usage and admitted that the Adderall found on him at the time of the arrest was purchased from a customer at a bar where he used to bartend; it was not prescribed. Tr. at 32. He was prescribed Adderall one time in 2009, for a period of thirty days. After that time he acquired it illegally without a prescription. Tr. 33-35. Respondent indicated that he had used it on multiple occasions without a prescription, Tr. at 34.

During the sanctions phase of the hearing, Thomas Foley, Esquire testified on behalf of the Respondent. Mr. Foley was admitted to the Delaware Bar in 1990 and practices in criminal defense. Tr at 44. Mr. Foley met Respondent because he was co-counsel with a partner at the

5

law firm where Respondent is employed in a large complicated case involving the defense of a former executive at Wilmington Trust. Tr. at 45. Mr. Foley worked with the Respondent for many hours on an almost daily basis leading up to the trial and then on a daily basis once the two-month trial started over the course of that case. Tr. at 45-46. Prior to the events leading up the arrest, the legal team which included Respondent had spent a lot of time working on a Motion for a Judgment of Acquittal in the case and had not gotten a lot of sleep. Tr. 48. Mr. Foley did not observe Respondent impaired during that time period. Tr. at 48-50. Mr. Foley later represented him in his criminal defense of the charges leading to the present disciplinary matter and assisted him with negotiating a plea. Tr. at 50-51. Mr. Foley indicated that Respondent has been compliant with the terms of his plea arrangement. Tr. at 54. In Mr. Foley's opinion, the question of whether or not Respondent was carrying a concealed deadly weapon was a close factual question. Tr. 51-54. Mr. Foley testified that he was very impressed with Respondent's character and the way that he took full responsibility for his actions and was taking measures to address them. Tr. 55-56.

Respondent testified again during the sanctions phase of the hearing. Respondent admitted that he had a drinking problem prior to the events leading to the arrest and had self-imposed periods of sobriety. Tr. 86-88 and 186-187. Respondent admitted that he used Adderall without a prescription on more than one occasion while he was working as an attorney. Tr. 90-91 and 185-186. Respondent admitted that he should not have transported the firearm loaded and did not possess a concealed weapon permit. Tr. 93-94 and 189-190. Respondent testified that in the days leading up to the arrest, he had worked long hours without much sleep. Tr. 99. He admitted that he had consumed Adderall the day before the arrest and on the day of the arrest. Tr. 99. Respondent admitted that the loaded firearm remained in the vehicle and even though he

6

believed the bag was latched, the police officer was able to easily open the bag. Tr. 100-101.

Respondent indicated that he consumed a couple of swigs of Fireball and a few beers at the party around 5:00 pm. Tr. at 103. Respondent testified that he took a second Adderall on the day of the arrest after he started drinking. Tr. 103-104.

Respondent testified that after he left the party around 7:00 pm he drove and parked his car to go to bars in the Trolley Square area. Tr. at 111-112. Respondent indicated that he drank alcoholic beverages at multiple locations in Trolley Square Tr. 113-114. Respondent testified that he left the Trolley Square area and then drove his car to Famous Joe's bar in the Branmar Shopping area around 9 or 10. Tr. 115-116. Respondent indicated that he had several more alcoholic beverages at Famous Joe's bar and that he drove his car around 2:00 am to return home. Tr. 116-117.

Respondent testified that he is very remorseful for his actions. Tr. 197-200. Respondent testified that he has been actively participating in his recovery and has followed the recommendations of DE-Lap. Tr. 193-196. Respondent has no prior disciplinary history. Tr. at 196. Respondent testified that he has been cooperative with the Office of Disciplinary Counsel. Tr. at 196-197.

Russell Stolkes Nolte, Esquire testified on behalf of Respondent. Mr. Nolte works at the law firm that employed Respondent at the time of his arrest and that continues to employ Respondent. Tr. 122. Mr. Nolte interacted with him during the Wilmington Trust trial on an almost daily basis and was pleased with his work performance. Tr. 123-124. Mr. Nolte never witnessed Respondent impaired while he was working for him. Tr. at 124. Mr. Nolte has a favorable impression of Respondent's character and abilities as a member of the Delaware Bar.

Tr. 125. Mr. Nolte indicated that Respondent has been willing to accept responsibility for his actions and to take measures to address his failures. Tr. 126-127.

Scott McDerby also testified on behalf of Respondent. Mr. McDerby met Respondent in connection with his efforts to address his addiction issues. Tr. 129. Mr. McDerby indicated that Respondent has been an active participant in their group to address addiction and recovery and has participated at least 3-4 times a week over the last 7 months. Tr. 130-131. Mr. McDerby testified that he has served as Respondent's mentor in the process and that the Respondent has remained very committed and dedicated to maintaining his sobriety. Tr. 131-132. Mr. McDerby indicated that Respondent is extremely remorseful. Tr. 133. Mr. McDerby testified that he finds Respondent to be a person of integrity and who is willing to accept responsibility for his actions. Tr. 134.

David E. Wilkes, Esquire also testified on behalf of Respondent. Mr. Wilkes' firm employs Respondent. Tr. at 137. During the time period that Respondent has been employed, Mr. Wilkes worked with Respondent and interacted with him frequently, if not daily then several times a week. Tr. 138. Mr. Wilkes testified that Respondent was an extraordinarily talented young lawyer who was very reliable and hard working. Tr. 138-139. Mr. Wilkes never observed Respondent as impaired during the time period that he worked with him. Tr. 141. Mr. Wilkes testified that Respondent has been very forthcoming about the arrest and the events leading to the arrest and has been very remorseful. Tr. 142-145. Mr. Wilkes' firm continued to employ Respondent as a law clerk after his arrest and followed ODC's guidelines. Tr. 145-146. Mr. Wilkes indicated that he believes Respondent will be a good member of the Delaware Bar once he is reinstated and would continue to be willing to employ him. Tr. 146-147.

8

Timothy Cairns, Esquire testified on behalf of Respondent. Mr. Cairns met Respondent through his participation in the recovery community through DE-Lap. Tr. at 149-150. Mr. Cairns indicated that Respondent has been very active in the recovery process. Tr. 151-152. Mr. Cairns testified that Respondent was very remorseful and was very active in attending meetings and reaching out to those in the recovery community. Tr. 153-155. Mr. Cairns believes that Respondent should be a member of the Delaware Bar. Tr. 155-157.

Carol P. Waldhauser testified on behalf of Respondent. Ms. Waldhauser is the Executive Director of the Delaware Lawyer's Assistance Program. Tr. 159. Ms. Waldhauser met Respondent because he voluntarily enrolled in an agreement with DE-Lap. The agreement includes monitoring. Tr. at 159-160. Respondent has been cooperative with the program and has followed the program requirements including seeking treatment and participating in recovery programs. Tr. 161-164. Ms. Waldhauser testified that Respondent has had no positive drug screenings which would include the components of Adderall. Tr. at 161-162. Ms. Waldhauser believes that Respondent is very remorseful for his actions. Tr. 163-164. Ms. Waldhauser believes that with the monitoring safeguards in place through DE-lap that Respondent would be fit to practice law. Tr. at 165-166. Ms. Waldauser admitted however, that Respondent has not met the DSM-V standards for sustained recovery, as under those standards the person must be sober for at least one year. Tr. 169-170.

**Standard of Proof**

The allegations of professional misconduct set forth in ODC's petition must be established by clear and convincing evidence. (Disc. Proc. Rule 15 (c))

**Findings on *Violations of the Rules***

Based on the Respondent's admissions and the evidence provided at the Hearing, the Panel finds that the ODC has met its burden of the allegations of professional misconduct

9

included in the Petition for discipline by clear and convincing evidence. Specifically, the Petition alleges, and the Answer, as amended, admits, two violations of the rules of the Delaware Lawyers' Rules of Professional Conduct as follows:

### COUNT ONE: RESPONDENT VIOLATED RULE 8.4 (b) BY COMMITING A CRIMINAL ACT THAT REFLECTS ADVERSELY ON HIS HONESTY, TRUSTWORTHINESS AND FITNESS AS A LAWYER.

Pursuant to Rule 8.4 (b), "i[t] is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Respondent violated Rule 8.4 (b) by engaging in criminal conduct when he knowingly and unlawfully carried upon or about his person a gun, operated a motor vehicle while under the influence of alcohol and/or knowingly possessed a controlled substance. Adderall, without a lawful prescription in violation of 11 Del. C. § 1143, 21 Del. C. § 4177 (a) and 16 Del. C. § 4763 (a).

### COUNT TWO: RESPONSENT VIOLATED RULE 8.4 (D) BY ENGAGING IN CONDUCT PREJUDCIAL TO THE ADMINISTRATION OF JUSTICE.

Pursuant to Rule 8.4 (d), "[i]t is professional misconduct for a lawyer to: (d) engage in conduct that is prejudicial to the administration of justice." Respondent violated Rule 8.4 (d) by engaging in conduct prejudicial to the administration of justice by committing criminal acts that reflect adversely on his honesty, trustworthiness and fitness as a lawyer.

Respondent admitted violations to these rules in his answers to the Petition for discipline. In addition, Respondent testified as to the factual circumstances that led to the rule violations. Exhibits were also admitted into the record further supporting the findings of rules violations. The Court has found in prior cases that similar criminal misconduct such as is present in this case "violates the lawyer's duties to the public, to the legal system and to the legal profession. *See In the Matter of Cairns,* 132 A. 3d 1160 (Del. 2016), *In the Matter of*

10

*Howard,* 765 A. 2d 39 (Del. 2009), and *In re Steiner,* 817 A.2d 793 (Del. 2003). Based upon the foregoing admissions, testimony and evidence admitted, the Panel finds that Respondent violated Rules 8.4 (b) and 8.4 (d) of the Delaware Lawyers' Rules of Professional Conduct.

## *Recommended Sanction*

The ODC contends that the presumptive sanction in this matter is suspension for a time period between eighteen months and three years, retroactive to the date of his current suspension May 3, 2018, with the possibility that due to mitigating circumstances present in this matter a suspension of less than eighteen months might be appropriate. ODC indicated that at a minimum the suspension should be for a period of at least six months and include the requirement that Respondent apply for reinstatement. Respondent agrees the presumptive sanction in this matter is suspension but that the period of suspension be entirely retroactive for a period of no more than six months or alternatively for a prospective period of no more than six months so that Respondent is not required to apply for reinstatement. For the following reasons, the Panel recommends that the Respondent be subject to a suspension of fifteen months retroactive May 3, 2018. Respondent shall be eligible to apply for reinstatement on August 3, 2019.

## *Rationale for Recommended Sanction*

In making its recommendation, the Panel utilized the four-part framework set forth in the ABA Standards for Imposing Lawyer Sanctions (1991 as amended February 1992) ("ABA Standards"). To promote consistency and predictability in the imposition of disciplinary sanctions, the Delaware Supreme Court looks to the ABA Standards. *In re Doughty,* 832 A.2d 724, 735-736 (Del. 2003) (citations omitted). The ABA Standards' framework considers: (1) the ethical duty violated; (2) the lawyer's state of mind; (3) the actual or potential injury caused by

11

the lawyer's misconduct; and (4) aggravating and mitigating factors. *Id.* The Panel also reviewed Delaware precedent.

### 1. *The Ethical Duties Violated.*

As previously recited, ODC alleged, the Respondent admitted, and the Panel determined that the Respondent committed misconduct in violation of Professional Rules of Rules 8.4 (b) and 8.4 (d) by engaging in criminal conduct when he knowingly and unlawfully carried upon or about his person a gun, operated a motor vehicle while under the influence of alcohol and/or knowingly possessed a controlled substance. Adderall, without a lawful prescription in violation of 11 Del. C. § 1143, 21 Del. C. § 4177 (a), and 16 Del. C. § 4763 (a) and by engaging in conduct prejudicial to the administration of justice by committing criminal acts that reflect adversely on his honesty, trustworthiness and fitness as a lawyer. Under the ABA Standards, this misconduct constituted violations of duties owed by the Respondent to the public (Rule 8.4 (b)), violations of duties owed by Respondent to the legal system, (Rule 8.4 (b)) violations of duties owed by Respondent to the Profession, (Rules 8.4 (b) and 8.4 (d)). *See* ABA Standards 5.0, 6.0 and 7.0.

### 2. *State of Mind.*

The ODC contends, the Respondent agrees, and the Panel finds that the Respondent's mental state was knowing. Knowledge is "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA standards definitions. Respondent testified that he took a controlled substance without a prescription on the day of the arrest, namely Adderall. Tr. 30-31. Respondent indicated that he consumed alcoholic beverages at a party after work and then drove his car from a party to bars in Trolley Square. Tr. 16-17. He testified that he then consumed

12

additional alcoholic beverages at more than one bar in Trolley Square and then drove his car from Trolley Square to Famous Joe's Bar. Tr. 16-17. He further testified that he consumed additional alcoholic beverages at Famous Joe's Bar prior to driving his car intending to return home when he was pulled over by a police officer. Tr. 17. Respondent admitted in his answer to the Petition violation of Rule 8.4 (b). There is no dispute that Respondent's conduct in taking Adderall without a prescription and operating a motor vehicle after the consumption of multiple alcoholic beverages on the day of the arrest was knowing. Respondent further testified that he placed loaded firearms in a bag in the front passenger side floor of his vehicle. Tr. 27-28. He admitted that as he was in a hurry to get to the office, he did not empty the ammunition from the guns. Tr. 27-28. "Negligence" is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation. ABA Standards Definitions. While arguably Respondent's conduct in the handling of the weapons could be considered negligent, it is does not impact the ultimate result in this matter because Respondent pled guilty to carrying a concealed dangerous instrument (2 counts) in violation of 11 Del. C. § 1443.

In light of the above, the Panel finds that the Respondent acted knowingly by engaging in criminal conduct when he knowingly and unlawfully carried upon or about his person a gun, operated a motor vehicle while under the influence of alcohol and/or knowingly possessed a controlled substance, Adderall, without a lawful prescription in violation of 11 Del. C. §1143, 21 Del. C. § 4177 (a) and 16 Del. C. § 4763 (a)

3.     *Actual or Potential Injury.*

While there was no harm to Respondent's clients, nor to the public in this matter, there was the potential for injury to the public when Respondent operated a motor vehicle while under

13

the influence of alcohol and by consuming a controlled substance without a prescription while operating a motor vehicle. Tr. 16-19. Although there was no evidence that clients were actually harmed, there was also potential harm to Respondent's clients in that he admitted that he had performed work for his clients after consuming a controlled substance without a prescription. Tr. 33-34. While there was no actual harm as a result of having loaded weapons in his car, there was the potential for actual injury, as the loaded guns could have accidently discharged or someone could have removed the guns from his vehicle while his car was parked.

Injury is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct." ABA standards, Definitions. Potential Injury is "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct. ABA standards, Definitions. However, actual injury is not required. *See, e.g., In re Benson*, 77 A.2d 258, 262 (Del. 2001). Here, he operated a motor vehicle while under the influence of alcohol and after consuming a controlled substance without a prescription while operating a motor vehicle. Tr. 16-19 and Tr. 30-31. Respondent's actions resulted in potential injury to the public; as on the day of his arrest, he operated a motor vehicle, more than once, while under the influence of alcohol and Adderall. Operating a vehicle under these conditions is a potential hazard to other motorists on the roadways and had the potential for collision(s) with other drivers. In addition, Respondent's actions resulted in potential injury to the public by failing to properly store and transport his weapons; resulting in loaded firearms being left unattended and unsecured on the passenger side floor of his vehicle.

With respect to the legal system, actual injury existed, as the Court system expended judicial resources in prosecuting his case resulting in Respondent's entry of a guilty plea. Ex.

14

14. There was also actual harm to the legal system and the legal profession by Respondent's conduct in disregarding the laws of this state by carrying a concealed dangerous weapon, by driving under the influence of alcohol and by illegal possession of a controlled substance. Ex. 14. In addition, Respondent caused potential injury to his clients and to third parties, by consuming a controlled substance without a prescription on more than one occasion and performing work for clients while under the influence of such substance, namely Adderall. Tr. 33-34.

4. *Presumptive Sanction.*

In the Panel's view, analysis of the ethical duties violated by the Respondent, the Respondent's state of mind and the potential for injury caused by Respondent's misconduct raise a presumptive sanction of suspension. The ethical duties violated direct the Panel to the following factors contained in the ABA Standards: 5.12 (for violation of Rule 8.4 (b) and 8.4 (d). Where, as in this matter, the lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standards 5.11 and that seriously adversely reflects on the lawyer's fitness to practice, these provisions point generally to suspension as an appropriate sanction. *See* ABA Standards 5.12. Respondent's conduct seriously adversely reflects on the lawyer's fitness to practice by carrying a concealed dangerous weapon, by driving under the influence of alcohol and by illegal possession of a controlled substance. Respondent's conduct caused potential injury to the public by operating a motor vehicle while under the influence of alcohol and a controlled substance, without a prescription and his clients by working after consuming a controlled substance obtained without a prescription. Respondent's conduct also caused potential injury to the public by transporting a loaded firearm on the passenger floor of his car.

ABA Standard 5.11 provides "Disbarment is generally appropriate when:

15

(a)     a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing or another; or an attempt or conspiracy or intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or (b) a lawyer engages in any other intentional conduct involving dishonestly, fraud, deceit or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

The Panel finds that Respondent's conduct does contain the elements listed in Standard 5.11 that would warrant disbarment. Respondent's conduct caused potential injury to the public and his clients and actual injury to the legal system and the legal profession. The presumptive sanction must then factor in the presence or absence of any mitigating or aggravating factors.

5.     *Aggravating and Mitigating Factors.*

ABA Standard 9.22 sets forth the following non-exhaustive list of aggravating factors:

(a)     prior disciplinary offenses;

(b)     dishonest or selfish motive;

(c)     a pattern of misconduct;

(d)     multiple offenses;

(e)     bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f)     submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

16

(g)     refusal to acknowledge wrongful nature of conduct;

(h)     vulnerability of victim;

(i)     substantial experience in the practice of law;

(j)     indifference to making restitution;

(k)     illegal conduct, including that involving the use of controlled substances.

(ABA Standard § 9.22)

The Panel finds that the following aggravating factors apply: 1) pattern of misconduct, and 2) illegal conduct, including that involving the use of controlled substances. Respondent had a pattern of misconduct, as there were multiple instances where he knowingly consumed Adderall without a prescription while practicing as an attorney. Tr. 90-91 and 185-186. While there is no evidence of actual injury, Respondent knew that it was illegal to take Adderall without a prescription and acquired it on more than one occasion without a prescription. Tr. 32-35. Respondent engaged in illegal conduct when he pled guilty to the possession of Adderall without a prescription. Ex. 14. The panel notes that these aggravating factors do not justify imposition of a sanction more severe than suspension, particularly in light of the numerous mitigating factors discussed below.

ABA Standard 9.32 sets forth the following non-exhaustive list of factors to be considered in mitigation:

(a)     absence of a prior disciplinary record;

(b)     absence of a dishonest or selfish motive;

(c)     personal or emotional problems;

(d)     timely good faith effort to make restitution or to rectify consequences of misconduct;

17

(e)     full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

(f)     inexperience in the practice of law;

(g)     character or reputation;

(h)     physical disability;

(i)     mental disability or chemical dependency including alcoholism or drug abuse when:

(1)     there is medical evidence that the Respondent is affected by a chemical dependency or mental disability;

(2)     the chemical dependency or mental disability caused the misconduct;

(3)     the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4)     the recovery arrested the misconduct and recurrence of that misconduct is unlikely;

(j)     delay in disciplinary proceedings;

(k)     imposition of other penalties or sanctions;

(l)     remorse;

(m)     remoteness of prior offenses.

(ABA Standard § 9.32)

The Panel finds that the following mitigating factors apply: 1) absence of a prior disciplinary record; 2) absence of a dishonest or selfish motive; 3) personal or emotional problems; 4) timely good faith effort to make restitution or to rectify consequences of

18

misconduct; 5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; 6) inexperience in the practice of law; 7) character or reputation; 8) imposition of other penalties or sanctions; and 9) remorse.

The evidence shows an absence of a prior disciplinary record. Tr. at 196. The record also shows an absence of a dishonest or selfish motive. The evidence shows personal or emotional problems. Tr at 185-189. The evidence also shows timely good faith effort to rectify the consequences of the misconduct. Tr. 196-200. It is undisputed the Respondent showed full and free disclosure towards the office of disciplinary counsel and a cooperative attitude toward proceedings. Tr. 196. Respondent is inexperienced in the practice of law having been admitted in February of 2015. Tr. at 16. The testimony provided by Respondent's character witnesses demonstrates Respondent's good character and reputation. Tr. 55-56, 124, 134, 146-147, 155-157. Respondent has other penalties and sanctions imposed as a result of the criminal matters. Ex. 14 and Tr. 24-29. The evidence is also unrefuted that Respondent is very remorseful. Tr. 126-127, 133, 142-45, 153-155, 163-164, and 197-200.

The mitigating factors in this matter clearly outweigh the aggravating factors.. The Panel found Respondent and the witnesses that testified on his behalf to be credible. The Panel is impressed with the immediate and significant voluntary steps that Respondent has taken to address his issues with alcohol and controlled substances. The Panel likewise believes that Respondent is genuinely remorseful for his actions which led to his arrest and criminal charges. Further, the Panel believes with additional time for recovery, Respondent will be an excellent member of the Delaware Bar. Nonetheless, the Panel finds that these mitigating factors cannot negate the sanction of suspension, but believe that they should be considered in determining the appropriate length of the suspension. The Panel believes that providing suspension would serve

19

the purpose of providing notice to the legal community and the public that lawyers have a duty to the public to abide by the laws of this State and that such violations of the law as in the instant matter are taken very seriously by the Board and the Delaware Supreme Court. *See In the Matter of Howard*, 765 A.2d 39 (Del. 2000) (where the Court ordered a three-year suspension after Howard was arrested and charged with multiple drug related felonies, as a result in a relapse in his recovery, but ultimately pled guilty to two drug related misdemeanors). Notably in Howard, like the present matter, no member of the public was actually harmed by Howard's actions and likewise Respondent although charged with felonies pled to misdemeanor charges.

6.      *Precedent.*

Lastly, the Panel believes that recommending a fifteen-month suspension in this matter is consistent with Delaware Supreme Court precedent. "[T]he objectives of any lawyer sanction should be to protect the public, to advance the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct." *In re Doughty*, 832 A.2d 724, 735-736 (Del. 2003) (citations omitted). Unfortunately, the Panel did not find any cases where the facts are exactly like those presented here. The most similar case is the Howard case in that no members of the public were harmed and where Howard was arrested for drug related felonies and ultimately pled to drug related misdemeanors. *See In the Matter of Howard*, 765 A.2d 39 (Del. 2000) (finding "while Howard's intentional misconduct may have severely undermined the public's confidence in the legal profession, his misconduct did not result in an articulable injury to any individual other than, perhaps, himself."). In the present matter there are more mitigating factors present then there were in Howard.

In the Cairns case, Cairns was given a twenty-one-month suspension retroactive to the date of his initial suspension. *See In Re Cairns*, 132 A.3d 1160 Del. 2016). Cairns was arrested

and charged with felonies after operating a motor vehicle under the influence of alcohol which resulted in his vehicle striking another vehicle and injuring the occupant of that vehicle. *Id.* Like the present matter, Cairns also ultimately pled to misdemeanor offenses. *Id.* Cairns also exhibited a "high level of commitment to and participation in rehabilitative measures and programs" and also has a reputation of good character among members of the Delaware Bar. *Id.* There were multiple witnesses who testified on behalf of Respondent regarding his continuing efforts to rehabilitate himself, his genuine remorse and the numerous steps he was taking to ensure that a similar event did not happen in the future. Unlike in Cairns, in the present matter no one was injured. Also unlike in Cairns, Respondent was not previously charged with driving under the influence of alcohol.

In the Amalfitano case, Amalfitano was given an eighteen-month suspension. *In the Mater of Amalfitano*, 931 A.2d 1006 (2007). Before transferring to disability inactive status, in 2002 and 2003, Amalfitano had multiple arrests for driving under the influence of alcohol and ultimately pled to driving under the influence of alcohol. *Id.* Respondent's only arrest for driving under the influence of alcohol are the ones stemming from the present matter. Unlike in the present matter, Amalfitano had a longer period of recovery as he transferred to disability/inactive status and the disciplinary charges were held in abeyance until 2007. *In the Mater of Amalfitano*, 931 A.2d 1006 (2007). At the time of the hearing, Amalfitano had demonstrated a sustained abstinence exceeding three years. *Id.* While Respondent urges the Panel for a sanction of six months or less, the Panel believes that while Respondent's actions to date are commendable, a longer period of time will serve to give Respondent additional time to work on his recovery efforts to ensure that a similar event does not happen in the future.

21

In the Steiner case, Steiner received a three-year suspension after pleading guilty to two counts of second-degree vehicular assault and one count of driving under the influence of alcohol. *In the Matter of Steiner*, 817 A,2d 793 (Del. 2003). Unlike in the present matter, Steiner's conduct lead to serious physical injury to someone as a result of the accident. *Id.* In addition, Steiner was given enhanced penalties as he was found to have violated probation on more than one occasion by consuming alcohol and violating the Court's zero tolerance policy. *Id.* In the present matter, Respondent has been compliant with the terms and conditions of his plea agreement and has not caused actual injury to someone.

With regard to an appropriate sanction, The ODC contends that the presumptive sanction in this matter is suspension for a time period between eighteen months and three years retroactive to the date of his current suspension as of May 3, 2018 with the possibility that due to the mitigating circumstances present in this matter that a suspension of less than eighteen months might be appropriate. The ODC indicated that at a minimum the suspension should be for a period of at least six months and include the requirement that Respondent apply for reinstatement. Respondent contends that the presumptive sanction in this matter is suspension but that the period of suspension be entirely retroactive for a period of no more than six months or alternatively for a prospective period of no more than six months so that Respondent is not required to apply for reinstatement.

The Delaware Lawyers' Rules of Disciplinary Procedure provide that suspension may be "for an appropriate fixed period of time not in excess of three years." Del. R. Disc. Proc. 8 (a) (2). The Panel recommends a fifteen-month suspension retroactive to the date of his interim suspension. Respondent would be eligible to apply for reinstatement on or after August 3, 2019. Respondent shall pay the costs associated with these proceedings incurred by the Office of

22

Disciplinary Counsel and remain under monitoring by DE-lap for a period of two years. The Panel believes that this period of suspension will serve to deter Delaware lawyers and also serve to permit Respondent additional time for a sustained period of recovery. At the same time, the Panel believes that a period in excess of this amount would be overly punitive as it relates to the Respondent and the facts of this particular case in comparison with the existing Delaware precedent.

### Conclusion.

Based on the foregoing considerations, the Panel recommends as action of the Board that the sanctions set forth in Section V of this Report be imposed upon the Respondent, including the imposition of costs of these disciplinary proceedings, pursuant to Delaware Lawyers' Rule of Disciplinary Procedure 27.

Respectfully submitted,

Deirdre A. McCartney, Esquire, Chair
Date: 1-11-19

William T. Deely, Esquire
Date: 1/10/19

Dr. Nisha Lodhavia
Date: _____

23

Disciplinary Counsel and remain under monitoring by DE-lap for a period of two years. The Panel believes that this period of suspension will serve to deter Delaware lawyers and also serve to permit Respondent additional time for a sustained period of recovery. At the same time, the Panel believes that a period in excess of this amount would be overly punitive as it relates to the Respondent and the facts of this particular case in comparison with the existing Delaware precedent.

**Conclusion.**

Based on the foregoing considerations, the Panel recommends as action of the Board that the sanctions set forth in Section V of this Report be imposed upon the Respondent, including the imposition of costs of these disciplinary proceedings, pursuant to Delaware Lawyers' Rule of Disciplinary Procedure 27.

Respectfully submitted,

Deirdre A. McCartney, Esquire, Chair
Date: 1 11 19

William T. Deely, Esquire
Date:

Dr. Nisha Lodhavia
Date: 1 10 19

23